**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 07-50094 |
| Plaintiff - Appellee, | D.C. No. CR-05-01002-JSL-01 |
| v. | |
| HENRIK JOHANSEN, | MEMORANDUM [*] |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 07-50095 |
| Plaintiff - Appellee, | D.C. No. CR-05-01002-JSL-02 |
| v. | |
| STANDBY PARTS, INC., | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California
J. Spencer Letts, District Judge, Presiding

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

Submitted December 11, 2009[]
Pasadena, California

Before: HALL and SILVERMAN, Circuit Judges, and CONLON,[***] District Judge.

Henrik Johansen ("Johansen") and Standby Parts, Inc. ("Standby") timely appeal from a judgment of conviction, entered after a five-day jury trial, on one count of conspiracy to commit fraud involving aircraft parts in violation of 18 U.S.C. § 38(a)(3) ("Count One"), and one count of falsifying or concealing a material fact concerning an aircraft part in violation of 18 U.S.C. § 38(a)(1)(A) ("Count Two"). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I.

The large body of testimonial and documentary evidence presented at trial, the procedural events of the case, and the applicable law are well known to the parties. Thus, we will recite such information only as necessary to our disposition of the claims of error raised in this appeal.

---

[**] The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***] The Honorable Suzanne B. Conlon, United States District Judge for the Northern District of Illinois, sitting by designation.

## II.

Johansen and Standby (collectively, "defendants") first contend that there was insufficient evidence to support their convictions. "There is sufficient evidence to support a conviction if, 'viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Corona-Verbera*, 509 F.3d 1105, 1117 (9th Cir. 2007) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We must draw all reasonable inferences in favor of the government, and resolve any conflicts in the evidence in favor of the jury's verdict. *Id.* Applying this standard of review, we reject defendants' claims of insufficiency of the evidence to support their convictions.

As to Count Two, the evidence presented at trial was plainly sufficient for a rational jury to find that, as alleged in the indictment, the "as removed" bolts sold to ASI were not "new," that defendants knew they were not "new," and that defendants acted with the intent to defraud when they sold the bolts as "new." That evidence included the following: documents showing that Standby purchased eight engine bolts in "as removed" condition; testimony and documents showing that Johansen inspected the bolts upon receipt and found some of them to be in "damaged" condition; testimony of an FAA Aviation Safety Inspector stating that

parts sold "as removed" are considered to be in "used" condition;  testimony of admitted co-conspirator Daniel Booker ("Booker") that he was authorized by the FAA to issue "airworthiness certificates" (Forms 8130-3) for aircraft parts, and often did so for parts sold by defendants without ever inspecting the parts and/or receiving relevant traceability documentation;  further testimony from Booker admitting that he provided a Form 8130-3 for the bolts sold to ASI, certifying them as "new" without having been provided the documents showing Standby purchased them "as removed";  admissions Johansen made to an FBI agent about how he was able to obtain Forms 8130-3 from Booker certifying the parts as "new" without Booker seeing the part, and his practice of and altering (or directing Standby employees to alter) source documentation for parts purchased in "repairable" or "as removed" condition, to redesignate them as "new";  testimony from the president of ASI stating that defendants did not provide the source documentation showing the bolts were purchased by Standby in "as removed" condition, but rather a copy of the document that was modified by Johansen to state that they were "new"; documents and further testimony by ASI's president showing that he requested "new" bolts for resale to a customer, with full traceability and Form 8130-3, and that the customer had returned the bolts to ASI and demanded a refund because the bolts were not "new."  This and other evidence in the record was sufficient to

support defendants' convictions of falsifying or concealing a material fact concerning an aircraft part. *See* 18 U.S.C. § 38(a)(1)(A)

As to the conspiracy charged in Count One, there was ample evidence of interlocking events sufficient to demonstrate that defendants agreed with Booker to carry out the charged objectives, and that they, Booker, or other co-conspirators knowingly falsified material facts, made materially fraudulent representations, or prepared materially false documents concerning aircraft parts sold to ASI and at least one other customer, Midway Trading Company. *See White v. United States,* 394 F.2d 49, 53 (9th Cir. 1968). Moreover, the jury could reasonably infer that both defendants and Booker—who admittedly supplied numerous false Forms 8130-3 for parts sold by defendants without seeing the parts or traceability documentation required to issue valid certifications—knew the certifications Booker issued for the bolts and other aircraft parts were false. The jury also could reasonably infer defendants' knowledge of the unlawful objectives of the conspiracy from Booker's testimony that Johansen threatened to report Booker to the FAA if Booker did not continue providing defendants with fraudulent certifications. This and other evidence presented at trial was adequate to show at least tacit agreement between defendants and Booker to knowingly sell aircraft parts using materially false documents and, thus, a conspiracy to commit fraud

involving aircraft parts in violation of 18 U.S.C. § 38(a)(3).

## III.

Defendants next contend that they were prejudiced by the misconduct of government witnesses who met a juror in the bar of a hotel where they were all being housed during trial, attempted to engage her in conversation, offered to buy her drinks, and made a disparaging comment about the defendants. Relying on *Mattox v. United States*, 146 U.S. 140, 150 (1892), *Remmer v. United States*, 347 U.S. 227, 229-30 (1954), and more recent Ninth Circuit jury tampering cases, *see e.g., United States v. Dutkel*, 192 F.3d 893, 894-95 (9th Cir. 1999), defendants argue that the encounter in the hotel bar was presumptively prejudicial, and that the government failed to make a sufficiently strong showing to rebut the presumption. Defendants further contend that by refusing to declare a mistrial based on this incident, the district court abused its discretion and violated their Sixth Amendment rights to a fair trial by an impartial jury. We disagree.

Assuming without deciding that the *Mattox-Remmer* presumption was triggered in this case, the issue is whether the prosecution has shown there was no reasonable possibility that the unauthorized communication between the government witnesses and the juror influenced the verdict. *See Caliendo v. Warden, Cal. Men's Colony*, 365 F.3d 691, 696 (9th Cir. 2004) (citing *Dutkel,* 192

F.3d at 899). We believe the prosecution met its burden in the circumstances of this case. The juror's encounter with the government witnesses occurred on the night of the third day of trial, and was promptly reported to the trial judge the following morning, before the jury reconvened for the fourth day of trial. After being questioned by the district court and counsel, the juror was immediately removed for cause and replaced by an alternate. The juror said she had formed negative impressions about both the government witnesses and the defendants, and that she did not believe she could be fair and impartial, but that she had not discussed the incident or shared her impressions with any of the other jurors. There was, moreover, no indication that other jurors had been exposed to similar misconduct by the government witnesses, and the prosecutor took prompt curative action to prevent further misconduct by admonishing his witnesses not to have any contact with jurors. In these circumstances, we believe there was no reasonable possibility that the unauthorized communication between the government witnesses and the juror influenced the verdict. Accordingly, we reject defendants' claim that the district court's failure to order a mistrial based on this juror incident deprived them of their rights to a fair trial before an impartial jury.

## IV.

Finally, defendants contend that the district court committed plain error by

failing properly to question a juror about her prior relationship with the defendants, and thereby deprived them of their right to a fair trial before an impartial jury. We reject this claim of error.

The district court's voir dire must be reasonably sufficient to test the jurors for bias and partiality. *United States v. Payne*, 944 F.2d 1458, 1474 (9th Cir. 1991). That standard was satisfied here. The district court's voir dire was sufficient to establish that the prospective juror had heard of the defendants and knew they had been clients of her employer in connection with a real estate transaction, but that she did not recall any specific dealings with them. Based on the juror's responses, there was no indication of bias, and thus no reason for further inquiry at that point. The questioning was also sufficient to alert defendants to any need to ask additional questions, yet defendants failed to request supplemental voir dire and did not question her themselves—even though they were in a unique position to know the facts concerning any relationship between themselves and the juror or her employer. Nor did defendants object to the juror being seated.

Defendants suggest, however, that the juror's potential "bias" was not revealed until after the jury had completed its deliberations, when the foreperson sent a note to the trial judge, asking that the jurors not be polled individually about their verdict because "one of the jurors knows the defendants." Upon receiving

this note from the jury, the district court interviewed the juror about her relationship to defendants. The court then gave defendants an opportunity to ask additional questions, and they did so until they had no further questions. Defendants claim the court's inquiry was inadequate, but do not identify any additional issue the court should have addressed.

Defendants' contention that additional inquiry would have revealed grounds to challenge the juror for cause is likewise baseless. Although the juror's responses to the court's and the parties' questions were reported as "inaudible," the record shows that, after interviewing the juror, the defendants did not seek to remove her, and did not claim she had given false or deceptive answers during voir dire or that she could not be impartial due to her prior contact with defendants. It is also apparent from the exchange between the district court and counsel regarding the juror's responses that she had only limited professional contact with defendants, did not know defendants personally, did not communicate with her employer about defendants during the course of the trial, believed she was fair and impartial, and if she had any bias at all, it was in favor of defendants. In addition, the record indicates that the only communication the juror had with her fellow jurors about her contacts with defendants before they reached their unanimous verdict was what she said in open court during voir dire.

In sum, we find no error—plain or otherwise—in the district court's handling of voir dire. Nor does the record reveal any bias or partiality on the part of the juror in question. Accordingly, we reject defendants' claim that the district court's denial of their motion for mistrial based on this incident deprived them of their right to a fair trial before an impartial jury.

**V.**

For all the foregoing reasons, the judgment of conviction as to each defendant, including the sentence imposed, is **AFFIRMED.**